IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIANE REED, | ) | CASE NO. 1:12 CV 1436 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Diane Reed, for disability insurance benefits and supplemental security income.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Reed had severe impairments consisting of history of herniated discs, lumbar strain, obesity, personality disorder, and depressive disorder.[1] The ALJ made the following finding regarding Reed's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant is capable of unlimited pushing and pulling within the medium exertional limitations. The claimant is limited to occasional climbing of ladders, ropes, or scaffolds. The claimant retains the capacity to perform tasks with a wide range of complexity, in an environment that does not require fast paced production quotas and where the

---

[1] Transcript ("Tr.") at 17.

duties are relatively static and changes are infrequent and can be adjusted over time. The claimant can interact with others superficially and infrequently.[2]

Based on that RFC, the ALJ found Reed capable of her past relevant work as a cook helper, unit clerk, and mail sorter[3] and, therefore, not under a disability.[4]

Reed asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Reed argues that substantial evidence does not support the RFC finding. Reed's challenge presents two issues for decision. First, did the ALJ properly analyze and weigh the opinions of the consulting examining sources and the state agency reviewing sources? Second, should the RFC finding have included greater physical and mental limitations on work-related capabilities?

As explained below, I conclude that substantial evidence supports the Commissioner's decision that Reed is not disabled and recommend that the denial of her applications be affirmed.

---

[2] *Id.* at 19-20.

[3] *Id.* at 22.

[4] *Id.*

## Relevant Evidence From the Administrative Record

**1.      Physical impairments**

*a.      Treatment records*

On April 15, 2007, Reed sustained a workplace injury; while lifting a patient's leg, she felt a pull across the left side of her lower back.[5] About two weeks later, she visited the emergency room for treatment; she had a normal neurological examination and was diagnosed with an acute lumbosacral strain.[6]

In May 2007, Reed reported to Pratheep Pawa, M.D., that when she injured herself, she felt a pop in her back.[7] She had been given a Soma prescription in the emergency room but had not taken any medication yet.[8] Dr. Pawa noted good forward and backward bending, mild lumbar paraspinal tenderness, no difficulty walking on the toes and heels, negative straight-leg raise testing, 5/5 motor strength, and intact sensation.[9] Dr. Pawa diagnosed a lumbosacral sprain, prescribed Ibuprofen, and recommended physical therapy.[10]

---

[5] *Id.* at 330.

[6] *Id.* at 325, 327.

[7] *Id.* at 434.

[8] *Id.* at 348, 434.

[9] *Id.* at 434.

[10] *Id.* at 434, 580-81.

In July 2007, Reed reported to Naomi Saltes, D.C., of Lakewood Pain Management & Chiropractic that she had not undergone any treatment yet.[11] Her lumbar and right leg pain was dull and intermittent, and she occasionally had sharp pain with specific movements.[12] Reed began a course of physical therapy that month.[13] Therapy notes indicated that Reed walked more than one mile and as much as two miles to her appointments.[14] Reed reported that she had no radicular symptoms in July and August 2007.[15] At sessions between August and October 2007, she stated that her radiating pain was "decreasing," had "ceased" going "down [her] legs," and had "dissipated" in her feet.[16] She also reported that her pain was "not so bad;" she "felt significant relief" and "much better" with treatment; and she had increased energy and strength in her lower back.[17] Her therapist noted that Reed was "progressing well."[18]

A September 2007 MRI of the lumbar spine showed bulging of the L3-4 and L4-5 discs causing mild bilateral neural foraminal stenosis but no evidence of disc degeneration

---

[11] *Id.* at 547.

[12] *Id.*

[13] *Id.* at 426.

[14] *Id.* at 422, 425-26.

[15] *Id.* at 423, 426.

[16] *Id.* at 408-09, 411.

[17] *Id.* at 404, 406, 411, 422.

[18] *Id.* at 553.

or focal herniation.[19] In October 2007, Reed's chiropractors, T. Y. Dahodwala, D.C., and Heidi Williams, D.C., noted that a recent clinical evaluation showed several positive orthopedic tests but normal neurological findings and full muscle strength in the lower extremities.[20] Reed told them she had injured herself when she lifted and moved a patient who weighed over 275 pounds.[21]

In November 2007, Reed reported to Khalid Darr, M.D., that she occasionally took Ibuprofen for her symptoms.[22] Dr. Darr found some tenderness, muscle guarding, and spasms over the mid-lumbar region but noted that heel-toe walking and gait were normal, motor and sensory exams were intact, and Reed had no muscle atrophy or radiculopathy.[23] That month, Reed also had a consultation with orthopedic surgeon Kim Stearns, M.D.[24] Reed reported to Dr. Stearns that physical therapy "was of no help."[25] Reed reported that her main complaint was pain in both heels, and she only had "some occasional discomfort" in her back, without any radicular symptoms.[26] Dr. Stearns's impression was that, clinically, Reed had a lumbar

---

[19] *Id.* at 337.

[20] *Id.* at 342.

[21] *Id.* at 394.

[22] *Id.* at 352.

[23] *Id.*

[24] *Id.* at 355.

[25] *Id.*

[26] *Id.*

strain and mild radiculopathy, although there was no distinct evidence of the cause on the MRI.[27] Dr. Stearns recommended an EMG of the lower extremity to see whether there was nerve root irritation but felt Reed was not a surgical candidate at the time.[28]

In January 2008, Reed underwent diagnostic testing at On Site Neurology & Radiology, reporting she had constant pain at a level of 8/10, for which she "sometimes" took 600 mg of Ibuprofen "every now & then."[29] A nerve conduction study showed no evidence for either a neuropathy or a radiculopathy.[30] Lumbar and sacroiliac scans showed slight to moderate swelling in the lumbar spine, joint inflammation at L4-5, and early degenerative osteoarthritis of the lumbar spine.[31] The accompanying report explained that swelling symptoms usually subsided with conservative treatment, although some patients had adhesions that formed post-traumatically.[32]

### b.      *Consultative examination and evaluation by Kimberly Togliatti-Trickett, M.D.*

Reed underwent a physical consultative examination in February 2010 with Kimberly Togliatti-Trickett, M.D.[33] Reed had taken public transportation and walked half a mile up a

---

[27] *Id.*

[28] *Id.*

[29] *Id.* at 358.

[30] *Id.* at 361.

[31] *Id.* at 362.

[32] *Id.* at 363.

[33] *Id.* at 455-62.

hill to reach the office.[34] She reported that she could only lift 10 pounds and had pain that radiated into both legs.[35] She took Tylenol but received no injections or other treatment after finishing physical therapy.[36] During examination, Reed exhibited a normal gait and ability to ambulate on heels and toes, the ability to squat and rise independently, a normal active range of motion in the lumbar spine and extremities, functional mobility in the cervical spine in all planes, no joint abnormalities, 5/5 motor strength in the extremities, no muscle spasm or atrophy, negative straight-leg raise testing, and normal sensation and reflexes.[37] Dr. Togliatti-Trickett recorded specific dynamometer readings and quantified Reed's lumbar range of motion.[38]

Dr. Togliatti-Trickett opined that Reed was able to stand and walk "at least 4-6 hours at a time;" had no problem with sitting; and was able to lift and carry objects up to 40 pounds on occasion without difficulty.[39] Dr. Togliatti-Trickett indicated Reed was primarily limited by her subjective complaints of pain and recommended a light to sedentary job.[40]

---

[34] *Id.* at 460.

[35] *Id.*

[36] *Id.*

[37] *Id.* at 461.

[38] *Id.* at 456, 458.

[39] *Id.* at 461.

[40] *Id.* at 462.

*c.*     *Records review and evaluation by Myung Cho, M.D.*

In March 2010, state agency physician Myung Cho, M.D., reviewed the evidence and opined that Reed could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for a total of about six hours in an eight-hour workday; sit for a total of about six hours in an eight-hour workday; and occasionally climb ladders, ropes, and scaffolds.[41] Dr. Cho provided several reasons for discounting Reed's allegations and Dr. Togliatti-Trickett's opinion, including inconsistent objective medical findings and Dr. Togliatti-Trickett's reliance on Reed's subjective complaints.[42] State agency physician Maria Congbalay, M.D., reviewed the evidence and affirmed Dr. Cho's opinion in June 2010.[43]

**2.     Mental impairments**

*a.     Treatment records*

The transcript contains no records of any hospitalizations or treatment for mental impairments. Reed denied any such hospitalizations or treatments during her interview with Mitchell Wax, Ph.D., the consulting, examining psychologist.[44]

---

[41] *Id.* at 464-65.

[42] *Id.* at 468-69.

[43] *Id.* at 471.

[44] Tr. at 474.

-8-

**b.**    ***Consultative examination and evaluation by Mitchell Wax, Ph.D.***

In July 2010, psychologist Mitchell Wax, Ph.D. conducted a consultative examination at the request of the state agency.[45] Reed reported that she took no medications, had not been hospitalized within the last three years, had never undergone psychiatric hospitalization, and was not in counseling.[46] She reported that she was fired from her last job in April 2007 for not working well with other people.[47] She was fired from three other jobs, but she would not disclose the reasons for being fired, stating, "I don't know what this has to do with my depression."[48]

Dr. Wax observed that Reed was initially outgoing and friendly but "became annoyed" when probed "about all this other stupid stuff," telling him, "I have trouble with government people like you."[49] She alleged memory problems, but could not provide specific examples, and displayed good memory for recent and past events and an ability to complete recall, serial addition, and subtraction tasks.[50] She alleged difficulty concentrating but was able to focus and attend through the first part of the evaluation.[51] But she began to distort

---

[45] *Id.* at 472.

[46] *Id.* at 473-74.

[47] *Id.* at 474.

[48] *Id.* at 476.

[49] *Id.*

[50] *Id.* at 475.

[51] *Id.*

questions and became "more vague and circumstantial" as the session progressed.[52] She started to say that she cleaned her bathroom "but appeared to catch herself" and then denied that she did so.[53] Dr. Wax observed that "[s]he was suspiciously vague about how she spends a typical day."[54]

Reed reported that she cooked full meals three times a week and her daily activities included taking a 20-minute walk, shopping at the corner store, watching three to four hours of TV, and talking to her two cousins and son.[55] She lived on her own and did her own dishes and cleaning.[56] Dr. Wax opined that she had a markedly limited ability to relate to others based on prior firings and her verbalized annoyance with him; a moderate impairment in her ability to understand, remember, and follow instructions based on her distortion of questions and irritation when probed; and a moderate impairment in her ability to maintain attention, concentration, and persistence, noting that her pace was normal and at times she was focused, but she became "more vague and circumstantial" as the session progressed.[57]

---

[52] *Id.* at 477.

[53] *Id.* at 476.

[54] *Id.*

[55] *Id.* at 475-76.

[56] *Id.*

[57] *Id.* at 476-77.

c.      *Records review and evaluation by Todd Finnerty, Psy.D.*

State agency psychologist Todd Finnerty, Psy.D., reviewed the evidence in August 2010 and opined that Dr. Wax's assessment was not fully supported by the evidence and was based on a partially credible presentation by Reed.[58] Dr. Finnerty noted that Reed exhibited no autonomic signs of anxiety during her consultative examination, despite her reports of fear, worrying, and panic attacks.[59] Also, Reed reported being a "germaphobe" and was upset because Dr. Wax sneezed, but, as Dr. Finnerty pointed out, she had worked for years in medical offices, and she did not report a fear of germs at her physical consultative examination.[60] Dr. Finnerty noted that Reed initially reported having been "stabbed" on the bus, but later changed her description to being "poked."[61] As Dr. Finnerty concluded, Reed "may have a dramatic and intensive communication style possibly associated with a personality disorder" but "she has sustained interactions with others in the past and continues to engage in effective interpersonal transactions such as shopping daily."[62] He opined that Reed retained the capacity to perform tasks with a wide range of complexity and without fast-paced production quotas.[63] He further opined that Reed could interact with others

---

[58] *Id.* at 480.

[59] *Id.* at 475.

[60] *Id.* at 274, 480.

[61] *Id.* at 240, 480.

[62] *Id.* at 480.

[63] *Id.* at 481.

superficially and infrequently in an environment where duties were relatively static and changes were infrequent and could be adjusted to over time.[64]

## Analysis

**1.    Standard of review – substantial evidence**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[65]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[64] *Id.* at 481.

[65] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[66] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[67]

I will review the findings of the ALJ at issue here consistent with that deferential standard. The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

## 2.     The sequential evaluation process

To qualify for the benefits sought here, a claimant must establish the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months and that this impairment renders the claimant unable to engage in any substantial gainful employment.[68]

The Social Security Act establishes a five-step sequential evaluation process for evaluating disability claims.[69] First, the claimant must demonstrate that she is not currently engaged in substantial gainful activity at the time of her applications.[70] Second, the claimant

---

[66] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[67] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[68] 42 U.S.C. § 423(d)(1)(A); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009).

[69] *Id.*; *see also*, 20 C.F.R. §§ 404.1520, 416.920.

[70] *Rabbers*, 582 F.3d at 652.

must present a severe medically determinable physical or mental impairment – *i.e.*, an impairment significantly limiting her physical or mental ability to do basic work activities.[71] Third, the ALJ must determine if any severe impairment meets or equals one of the listings in Appendix 1 of the regulations for the 12-month durational requirement.[72] If so, the claimant is presumed disabled.[73] Fourth, if the claimant's impairment or impairments do not meet or equal a listing, then the ALJ must determine her residual functional capacity for work-related activities and decide if that RFC prevents her from doing her past relevant work.[74] Fifth, if the RFC precludes past relevant work, then the ALJ must decide if other jobs exist in the national economy that the claimant can perform.[75] The claimant has the burden of proof through step four of the sequential evaluation process.[76] At step five, the burden shifts to the Commissioner to prove if a substantial number of jobs exists in the national economy that the claimant can perform.[77]

---

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] *Id.*

[76] *Her v. Comm's of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

[77] *Id.*

-14-

3.     **Substantial evidence supports the RFC finding and the finding that with such RFC Reed can perform past relevant work.**

This is a challenge to the ALJ's finding of RFC and to the finding that Reed's RFC permitted her to perform her past relevant work. Essentially, Reed argues that her RFC was more restrictive than that found by the ALJ and that this more restrictive RFC required a finding that she could not perform her past relevant work and further analysis at step five.

Reed essentially presents two issues for decision. First, did the ALJ properly analyze and weigh the opinions of consulting examining sources and state agency reviewing sources? Second, should the RFC finding have included greater physical and mental restrictions on work-related capabilities?

Reed's challenge to the RFC finding centers on the ALJ's evaluation of weight assigned to the opinions of the examining and reviewing sources. Physically, Kimberly Togliatti-Trickett, M.D., a physical medicine and rehabilitation specialist, performed a consultative examination of Reed and gave an opinion. She diagnosed Reed as having low back pain caused by bulging lumbar discs and foraminal stenosis.[78] She expressed the opinion that Reed should be able to stand and walk for at least four to six hours at a time, sit without difficulty, and lift and carry objects up to 40 pounds on occasion.[79] She observed that

---

[78] Tr. at 461.

[79] *Id.*

Reed was primarily limited by her subjective complaints of pain.[80] She recommended light to sedentary jobs for Reed.[81]

A state agency reviewing physician, Myung Cho, M.D., reviewed Reed's medical records, including Dr. Togliatti-Trickett's evaluation. She noted minimal objective findings,[82] inconsistent allegations of pain, and Dr. Togliatti-Trickett's reference to limitations by subjective complaints of pain.[83] She concluded that a limitation to four hours of standing/walking was not supported by the evidence.[84] She opined that Reed was capable of medium work.[85]

The ALJ gave Dr. Cho's evaluation great weight and Dr. Togliatti-Trickett's opinion some weight.[86] As an explanation for the respective weight assigned, the ALJ pointed to minimal objective findings, credibility issues, and Dr. Togliatti-Trickett's reliance upon subjective allegations.[87]

---

[80] *Id.* at 461-62.

[81] *Id.* at 462.

[82] *Id.* at 464-65.

[83] *Id.* at 469.

[84] *Id.*

[85] *Id.* at 464.

[86] *Id.* at 21, 22.

[87] *Id.*

-16-

A similar situation exists regarding mental limitations. Mitchell Wax, Ph.D., a psychologist, did a consulting mental evaluation. Dr. Wax noted that Reed had an acceptable appearance and presented as friendly and outgoing.[88] The interview deteriorated as it progressed, however, and Dr. Wax reported that Reed had "difficulty with this psychologist."[89] He observed that Reed "showed annoyance with this psychologist."[90] Dr. Wax characterized Reed as withholding information[91] and vague.[92] He further characterized Reed as distorting questions and not answering questions directly.[93] Dr. Wax gave Reed a low GAF and found marked to moderate mental limitations.[94]

The state reviewing psychologist, Todd Finnerty, Psy.D., found some moderate limitations, particularly with respect to relationships and interactions.[95] He acknowledged Dr. Wax's opinion but concluded is was not fully supported because of Reed's only partial credible presentation during the examination.[96] He went on to discuss various inconsistencies

---

[88] *Id.* at 474.

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] *Id.* at 476.

[93] *Id.*

[94] *Id.* at 476-77.

[95] *Id.* at 478-79.

[96] *Id.* at 480.

in the facts reported by Reed.[97] He gave the opinion that Reed did have certain mental limitations, which the ALJ incorporated into the RFC finding.[98]

The ALJ gave Dr. Wax's opinion little weight because Reed interacted with him in a less than cooperative manner, which resulted in an only partially credible presentation upon examination.[99] He gave great weight to Dr. Finnerty's mental residual functional capacity assessment and incorporated the limitations opined by Dr. Finnerty into the RFC finding.[100] The ALJ found Dr. Finnerty's opinion supported by Reed's presentation at the hearing, her lack of treatment, the finding that she had average intelligence upon examination, and her ability to hold employment in the past despite a history of depression.[101]

An examining, non-treating source is one that has examined the claimant but has no ongoing treatment relationship with her.[102] Drs. Togliatti-Trickett and Wax are non-treating, examining sources.

A non-examining source is a physician or psychologist who has not examined a claimant but provides a medical or other opinion based upon a review of the claimant's

---

[97] *Id.* at 11.

[98] *Id.* at 12, 481.

[99] *Id.* at 22.

[100] *Id.*

[101] *Id.*

[102] *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010), citing 20 C.F.R. § 404.1502 and *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).

medical records.[103] State agency and medical psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of medical issues and disability claims; they consider the medical evidence and render opinions regarding the claimant's residual functional capacity.[104] Drs. Cho and Finnerty are non-examining sources.

Generally, the opinion of an examining source is given more weight than that of a non-examining source.[105] This is not a bright-line rule, however.[106] A non-examining source's opinion may receive greater weight under certain circumstances.[107] The opinion of a non-examining source may receive greater weight than that of an examining source if the non-examining source bases his report on the review of the "complete case record," the examining source's opinion rests on a single personal observation of the claimant, and the non-examining source's opinion clearly states the reasons it differs from that of the examining source.[108]

On substantial evidence review, the evidence supports the ALJ's decision to give the opinions of the non-examining sources, Drs. Cho and Finnerty, greater weight than

---

[103] *Id.*

[104] SSR 96-6p, 61 Fed. Reg. 34466, 34467 (July 2, 1996).

[105] *Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 464 (6th Cir. 2012).

[106] *Id.*

[107] *Id.* citing *Lyons v. Soc. Sec. Admin.*, 19 F. App'x 294, 302 (6th Cir. 2001).

[108] *Fitzgerald v. Comm'r of Soc. Sec.*, No. 1:09cv1703, 2010 WL 2572877, at *2-3 (N.D. Ohio June 23, 2010).

that of those of the examining sources, Drs. Togliatti-Trickett and Wax. Although Dr. Togliatti-Trickett specialized in physical medicine and rehabilitation, and Dr. Cho's specialty is not specified, Dr. Togliatti-Trickett examined Reed only once, noted minimal objective findings, and placed limitations based upon subjective complaints. She did not have the benefit of all of Reed's medical records. Dr. Cho, on the other hand, reviewed the complete medical record, including Dr. Togliatti-Trickett's opinion, and concluded that lesser limitations were appropriate. A reasonable mind could accept the ALJ's conclusion regarding respective weight and resulting limitations.[109]

Likewise, Dr. Wax did a single mental evaluation of Reed during which the psychologist and the claimant did not relate well. Dr. Finnerty, the state agency reviewing psychologist, acknowledged Dr. Wax's opinion but concluded that it was not fully supported because of Reed's only partial credible presentation during the examination. He went on to discuss various inconsistencies and facts reported by Reed. A reasonable mind could accept the ALJ's conclusion that Dr. Finnerty's limitations more accurately captured Reed's RFC and his decision to give Dr. Finnerty's opinion more weight and to incorporate his limitations into the RFC finding.

---

[109] At the hearing before the ALJ, the VE identified at least one job (unit clerk) among the past relevant work that was light, which would satisfy the exertional limitations that Reed says should have been incorporated into the RFC finding based on Dr. Togliatti-Trickett's report. (Tr. at 23, 77-79.) Counsel for Reed at the hearing before me acknowledged this but stated that there is a problem regarding mental limitations and that particular job – unit clerk. Accordingly, although the ALJ properly gave Dr. Cho's opinion more weight than that of Dr. Togliatti-Trickett, even if the ALJ erred in that regard, such error would not affect the ALJ's finding that exertionally Reed could perform her past relevant work as a unit clerk.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Reed had no disability. Accordingly, I recommend that the decision of the Commissioner denying Reed disability insurance benefits and supplemental security income be affirmed.

Dated: January 23, 2013                        s/ William H. Baughman, Jr.
                                                         United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[110]

---

[110] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).